IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHI TECHNOLOGIES, INTERNATIONAL, INC., an Oklahoma corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-CV-359-GKF-FHM ) |
| CONSORCIO PEGASO, an Ecaudorian unincorporated joint venture partnership, and CAMPO PUMA ORIENTE S.A., a Panamanian incorporated joint venture, and joint venturer/partner in Defendant CONSORCIO PEGASO, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the court is the Motion for Alternative Service [Doc. No. 7] of plaintiff Joshi Technologies International, Inc. ("JTI"). For the reasons set forth below, the motion is denied without prejudice.

### I. Background

This dispute arises from the alleged failure of defendants Consorcio Pegaso and Campo Puma Oriente S.A. ("CPO") to make payments required under a series of promissory notes to JTI. As alleged, Consorcio is a joint venture partnership with its principal place of business in Ecuador; CPO is a joint venture incorporated in Panama; CPO's principal place of business is also in Panama, though it operates a branch in Ecuador. Gammon India Limited—an Indian company—is the majority owner of CPO, which in turn, is a member and majority owner of Consorcio. JTI moves to serve CPO and Consorcio by email—specifically, by email addressed to certain corporate representatives of Gammon. Panama, Ecuador, and the United States are all

members of the Inter-American Convention on Letters Rogatory ("IAC"), which governs "[t]he performance of procedural acts of a merely formal nature, such as service of process." Inter-American Convention on Letters Rogatory art. 2(a), Jan. 30, 1975, 28 U.S.C. § 1781.

## II. Legal Standard

A federal court may assert jurisdiction over a defendant only if "'the procedural requirements of service . . . [have] be[en] satisfied." *See Baca v. Rodriguez,* 554 F.App'x 676, 678 (10th Cir. 2014) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 108 S.Ct. 404, 409 (1987)); *Haryarimana v. Kagame*, 821 F. Supp. 2d 1244, 1251 (W.D. Okla. 2011). Service not only "notif[ies] a defendant of the commencement of an action against him," but also "provid[es] a ritual that marks the court's assertion of jurisdiction over the lawsuit." *See Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992). To that end, Fed. R. Civ. P. 12(b)(5) permits dismissal of a case for "insufficient service of process." As a general matter, that analysis is governed by Fed. R. Civ. P. 4 and principles of due process. *See Okla. Radio Assocs.*, 969 F.2d at 943; *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1279 (10th Cir. 2016).

## III. Analysis

JTI asks the court to order service by email on corporate representatives of Gammon—not CPO or Consorcio—pursuant to Fed. R. Civ. P. 4(f)(3). Citing *Rio Props., Inc. v. Ri Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) and its progeny, JTI asserts that Rule 4(f)(3) stands on equal footing with other methods of international service allowed by Rule 4. [Doc. No. 7, pp. 1–4]. For purposes of this opinion, the court assumes *Rio* was correctly decided, but nevertheless concludes that the method of service requested by JTI must be rejected.

*First*, JTI's request is constitutionally defective. Service by email on a parent company is not "reasonably calculated" to provide notice to the subsidiary-defendants in this case. Even in

the best of circumstances, notice by email has significant limitations: "there is no way to confirm receipt of an email message"; "[l]imited use of electronic signatures could present problems in complying with [ ] verification requirements"; "compatibility problems may lead to controversies over whether an exhibit or attachment was actually received"; and "[i]mprecise imaging technology may even make appending exhibits and attachments impossible in some circumstances." *See Rio*, 284 F.3d at 1018; *accord Liberty Media Holdings, LLC v. Sheng Gan*, Civil Action No. 11-cv-02754-MSK-KMT, 2012 WL 122862, at *2 (D. Colo. Jan. 17, 2012).

And these are not the best of circumstances. JTI seeks to serve Gammon—a parent company—rather than CPO or Consorcio directly. "Generally, service on a parent, subsidiary, cosubsidiary, or affiliate of a corporate defendant is not service on the defendant." AM. JUR. 2D § 255 (2007); *accord Carl Kelly Const. LLC v. Danco Techs.*, 656 F.Supp.2d 1323, 1336 (D.N.M. 2009); *Raeth v. Bank One*, Civil Action No. 05-cv-2644-WDM-BNB, 2008 WL 410596, at *3 (D. Colo. Feb. 13, 2008). That general rule applies here. JTI argues that Gammon agreed to accept service via email in a Joint Venture Agreement creating CPO. But the court finds no evidence to that effect. For one thing, JTI does not attach the Agreement. For another, nothing suggests Gammon agreed to accept service—as opposed to other notices required by contract—via email, or that it would do so on behalf of subsidiary entities. In fact, emails attached by JTI show that Gammon's corporate representatives were unsure "[h]ow . . . a [m]inor[ ] [p]artner in a JV [could] serve notice on [a] [m][a]jority [p]artner, without informing them in advance" and expressed "agitat[ion] and annoy[ance]" at being asked to "join the legal fray." [Doc. No. 7-3, p. 1]. JTI does not disclose what role, if any, Gammon's corporate representatives play in the operation of CPO or Consorcio.

*Second*, the court declines to exercise its discretion to order service under Rule 4(f)(3). Rule 4(f)(3) grants courts the discretion to authorize service "by other means not prohibited by international agreement." And before granting an (f)(3) request, the court may require that plaintiff attempt to conventionally serve defendants pursuant to (f)(1) or (f)(2). *See, e.g.*, *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 927 (11th Cir. 2003); *U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*, No. C07-1221RSL, 2007 WL 3012612, at * (W.D. Wash. Oct. 11, 2017); *Liberty Media Holdings*, 2012 WL 122862, at *2; *Nabulsi v. Nahyan*, Civil Action No. H-06-2683, 2009 WL 1658017, at *11 (S.D. Tex. June 12, 2009).

That approach comports with longstanding judicial practice to minimize potential conflict between domestic and international law. *See, e.g.*, *Murray v. Schooner Charming Betsy*, 6 U.S. 64 (2 Cranch), 118 (1804) (Marshall, C.J.) ("[A]n act of Congress ought never be construed to violate the law of nations if any other possible construction remains[.]"); Restatement (Third) of Foreign Relations Law of the United States §114 (1987) ("Where fairly possible, a United States statute is to be construed so as not to conflict with international law or with an international agreement of the United States.").

And it is supported by the Advisory Committee Notes as well. The note to subsection (f)(1) states that "the methods of service under an applicable treaty *shall* be employed if available and [ ] the treaty so requires." Fed. R. Civ. P. 4(f), advisory committee's note to 1993 amendment (emphasis added). And "resort . . . to the provision set forth in subdivision (f)(3)" was generally considered appropriate in exceptional circumstances—for example, when a "signatory state was dilatory or refused to cooperate." *Id.* Indeed, Rule 4(f)(3) was expreslly intended as a catchall to authorize "other methods of service not prohibited by international

4

agreements"—but only where "consistent with due process and [designed to] minimize[ ] offense to foreign law." *Id.*

JTI's approach here—to request service by email without first attempting service under foreign law—does not comport with that guidance. JTI argues service by email is not prohibited by the IAC. That is true, but beside the point. *See, e.g.*, Inter-American Convention on Letters Rogatory art. 15, Jan. 30, 1975, 28 U.S.C. § 1781 ("This Convention shall not . . . preclude the continuation of more favorable practices . . . that may be followed by these States."); *Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 647 (5th Cir. 1994); *In re Petrobras Secs. Litig.*, 14-CV-9662 (JSR), 2016 WL 908644, at *2 (S.D.N.Y. Mar. 4, 2016). Because an international agreement "allows but does not specify other means," Fed. R. Civ. P. 4(f)(2), JTI should endeavor to follow the laws of service for Panama and Ecuador before seeking leave to effectuate alternative service under subsection (f)(3). And that is supported by the text of the IAC, which does not preclude any method of service "that may be followed by" the foreign states at issue. Inter-American Convention on Letters Rogatory art. 15, Jan. 30, 1975, 28 U.S.C. § 1781.

JTI does not claim it endeavored to serve defendants under Ecuadorian or Panamanian law, or that email is an acceptable method of service in courts of general jurisdiction in either country. Therefore, JTI has not carried its burden to justify alternative service under Rule 4(f)(3). Simply put, "[a] liberal construction of Rule 4 'cannot be utilized as a substitute for the plain legal requirement[s] as to the manner in which service of process may be had.'" *See Nabulsi v. Nahayan*, Civil Action No. H-06-2683, 2009 WL 1658017, at *11 (S.D. Tex. June 12, 2009).

WHEREFORE, JTI's Motion for Alternative Service [Doc. No. 7] is denied without prejudice.

IT IS SO ORDERED this 25th day of July, 2017.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT